## UNITED STATES DISTRICT COURT EASTERN
## DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN FERNANDEZ and DELISEA BEVERLY WIFE OF, ET AL.**<br>**Plaintiffs,**<br><br>**Plaintiff.**<br><br>**-v-**<br><br>**AMERICAN SUGAR REFINING INC., et al.,** *(a/k/a AMERICAN SUGAR REFINERY a/k/a DOMINO SUGAR CHALMETTE)*<br><br>**Defendants.** | CIVIL ACTION NO:  2:25-cv-00772<br><br>SECTION: _____<br><br>JUDGE: _____<br><br>MAGISTRATE: _____<br><br><br>**ORIGINAL COMPLAINT** |

## ORIGINAL COMPLAINT FOR DAMAGES
## JURY TRIAL REQUESTED

NOW INTO COURT, through undersigned counsel, comes Plaintiff, John Fernandez,

who respectfully submits this Complaint against Defendant, American Sugar Refinery,

LLC ("ASR Group"), and avers as follows:

### I.  JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

   §2000e et seq., and the Americans with Disabilities Act (ADA), 42 U.S.C.

   §12101 et seq., as amended.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343, as this action presents federal questions arising under laws of the United States, specifically civil rights statutes.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiff worked for Defendant in Chalmette, Louisiana, which is within the Eastern District of Louisiana.

4. All conditions precedent to filing this action have been met, including the timely filing of charges with the Equal Employment Opportunity Commission (EEOC), and the receipt of a Right to Sue letter [Exhibit 1].

## II. PARTIES

5. Plaintiff, **John Fernandez** is an individual of Black race and a citizen of the State of Louisiana residing in this District. Plaintiff is an African American employee who was qualified for his position and consistently met or exceeded performance expectations. Despite this, he was denied promotion opportunities and subjected to disparate disciplinary actions compared to similarly situated white employees. Plaintiff was also exposed to racially offensive remarks and jokes, which created a hostile work environment.

Plaintiff was also groped on his chest by a white comparator in front of others, including the company head of security. The company failed to discipline any of the white employees. Instead, the employer engaged in targeted discriminatory conduct to humiliate and harass Mr. Fernandez. The Defendants, through its employees and agents isolated the Plaintiff, they falsified business documents and then engaged in character assignation by starting rumors that Plaintiff had mental issues to create a pretextual reason for terminating the Plaintiff. Defendants failed to investigate or take any remedial action and failed to communicate with the local union representatives. These actions constitute unlawful race discrimination in violation of Title VII, 42 U.S.C. § 2000e as well as violate additional federal and state laws.

6. **Delisea Beverly**, *wife of,* and *on behalf of the children* of the Plaintiff John Fernandez, citizens of the state of Louisiana, who as a result of Defendant's actions were injured and suffered damages.

7. Defendant **American Sugar Refining, Inc.**, doing business as ASR Group, is a foreign limited liability company authorized to do and doing business in Louisiana with over 400 employees. Its principal place of business is believed to be located outside of Louisiana, but its operations in Chalmette, LA form the basis of this Complaint. The term "Defendant" also includes employees,

agents, and statutory employees who all engaged in illegal discriminatory conduct.

8. XYZ Insurance Company, the liability insurer of Defendant, American Sugar Refining, Inc.

9. ABC Insurance Company, the excess insurer of Defendant, American Sugar Refining, Inc.

## III.  FACTUAL ALLEGATIONS

9. Plaintiff began his employment with American Sugar Refining, Inc., in 2020 and had no disciplinary  actions or complaints against him up to December 11, 2023.

10. In January 2022, Plaintiff qualified as a **No. 1 Maintenance Mechanic.** However, The Plaintiff was given a *made-up* job title of "Dock Mechanic," despite having his qualification documents on file in the Human Resources office.  The title of "Dock Mechanic" was not listed in the union policy handbook, and the position was created specifically segregate the Plaintiff from other (Caucasian) Mechanics.

11. On or about January 24, 2024, Plaintiff was removed from the Dock assignment and reassigned as a Maintenance Mechanic. Around this time, non-employee Jackie Fountaine—former owner of a contracting company doing business with ASR—entered the workplace, and this "reassignment" appeared to be both retaliatory and racially motivated.

12. In Summer 2023, white mechanic **Emmanuel Schubert**, in the presence of **Jackie Fountaine** and **Mark Watson**, stated to Plaintiff: **"What do you think about that video? Niggers for Trump!"**

13. Plaintiff walked away from the offensive comment without responding, in shock because the incredibility racist comment was made to him on the job in front of multiple staff and was done to harass and humiliate the Plaintiff

14. Around this time, Plaintiff's supervisor, **Kory Despaux**, described by Plaintiff as "a known drug addict," along with Human Resources, attempted repeatedly to remove Plaintiff from the Engineering Department.

15. On December 11, 2023, Plaintiff was summoned to a meeting with HR representative **Kourtney Rollins**, along with several other managers and a union representative. The Plaintiff was told quite coldly and directly **"None of**

**the workers want to work with you," and was falsely accused of making**
**threats, talking to himself, and being dangerous.**

16. On information and belief, the accusations and outright lies were deliberate,
    wanton and made with reckless disregard the Defendant, the Defendant's staff
    and agents' overt race-based illegal conduct was tolerated by American Sugar
    Refinery as a whole.

17. To exacerbate the situation, the Plaintiff was sent home without justification
    and was later required to undergo a mental health evaluation by Prime
    Medical, based on false and defamatory allegations that he was homicidal,
    schizophrenic, and a threat to others.

18. knowingly sent false medical documentation alleging Plaintiff's mental
    instability and dangerousness to Prime Medical, resulting in emotional trauma
    and stigmatization.

19. Plaintiff was medically cleared and returned to work on January 24, 2024.
    However, on January 24, 2024, he was presented with backdated disciplinary
    paperwork from November 30, 2023, falsely stating he was suspended for two
    weeks for allegedly threatening a coworker.

20. Additionally, in February 2024, the Plaintiff, a Black male employee, was subjected to an egregious and degrading act of workplace misconduct when a white male colleague, **Billy Dunn,** approached Plaintiff from behind and intentionally groped Plaintiff's chest in a suggestively sexual manner, and stated suggestively in the Plaintiff's ear: "remember me."

21. This offensive and non-consensual touching occurred in the presence of other employees, all of whom were white, and was done for the purpose of further humiliate and dehumanize the Plaintiff.

22. Immediately following or during the act, Billy Dunn made both sexually suggestive and racially charged remarks toward the Plaintiff, which further underscores the racial animus motivating the conduct.

23. The combination of the sexual assault and the racial slur was not isolated; rather, it was part of a broader pattern of harassment and discrimination experienced by the Plaintiff in the workplace.

24. The conduct was unwelcome, overtly sexual in nature, racially motivated, and occurred in a public and humiliating fashion, amounting to both sexual

harassment and racial discrimination under Title VII of the Civil Rights Act of 1964, as well as a violation of Plaintiff's rights to make and enforce contracts under 42 U.S.C. § 1981.

25. Defendant, American Sugar Refining knew or should have known of **Billy Dunn's**, **Emmanuel Schubert's**, and **Kory Despaux's** prior and continuing conduct and/or propensities for discriminatory or harassing behavior toward the Plaintiff.

26. Additionally, the Defendant knew or should have known that its own Human Resource professional, **Kourtney Rollins,** was an active participant in the aforementioned discriminatory and retaliatory conduct of race-targeting and played an ongoing and active role in American Sugar Refinery's failure to take any appropriate steps to prevent or correct the illegal conduct. Furthermore, it is alleged on information and belief, she may taken active steps to prevent investigation by UNION OFFICIALS and to interdict the fact findings process.

27. Defendant failed to take prompt and effective remedial action following Plaintiff's internal complaint(s) about the incident, thus ratifying and condoning the conduct of the aforementioned employees.

28. Furthermore, the UNION representatives were aware of the discriminatory conduct against the Plaintiff. However, they UNION was also met with hostile treatment by the Defendants.

29. As a direct and proximate result of the discriminatory, harassing, and retaliatory conduct, Plaintiff has suffered emotional distress, anxiety, humiliation, mental anguish, and other damages recoverable under law.

30. Plaintiff's coworkers then since ostracized and humiliated him, calling him "Crazy John," refusing to train him, and exhibiting hostility (including punching walls in his presence). Plaintiff was moved from the Dock to the Boiler House, a less desirable position, and was physically isolated from white workers consistent with the Kourtney Rollins' "declaration" that "nobody wanted to work with" the Plaintiff.

31. In addition to being subjected to race-based harassment, Plaintiff was also targeted by Defendants through false and discriminatory narratives that he suffered from mental illness, despite no such diagnosis or condition.

32. Defendant, through its supervisors, Human Resources personnel, and other agents and employees, deliberately constructed a hostile and toxic work

environment in which Plaintiff was falsely accused of threatening other employees, "mumbling" to himself, and displaying behavior they labeled as indicative of a "mental condition."

33. Defendants used these fabricated allegations as a pretext to send Plaintiff home and prevent him from returning to work unless he obtained a psychological clearance, thereby treating Plaintiff as if he had a disability under the ADA and Louisiana law—even though Plaintiff had no such condition.

34. These actions resulted in Plaintiff being placed on involuntary leave, denied his right to work, and stripped of his earned wages, benefits, and dignity.

35. Defendants documented these false claims in writing and perpetuated a malicious narrative within the workplace that Plaintiff had a mental illness, without medical evaluation, diagnosis, or justification, and without affording Plaintiff any due process or opportunity to refute the claims.

36. This conduct was not only based on Defendants' discriminatory treatment of Plaintiff on the basis of perceived disability, but was also motivated by racial

animus, as similarly situated white employees were not subjected to such treatment.

37. Despite being allegedly suspended for two weeks, Plaintiff was out of work for almost two months, and Defendant regarded him as mentally disabled, violating the ADA.

38. Plaintiff avers that race was the substantial motivating factor in the disparate treatment, retaliatory actions, and hostile work environment he endured.

39. Plaintiff further alleges that Defendant intentionally inflicted emotional distress, defamed his character, and deprived him of his civil rights under the Fourteenth Amendment (through state action or state-adjacent actors), including liberty and property interests in his good name and continued employment.

40. Upon Plaintiff's forced removal from the workplace under false and discriminatory pretenses, Defendants took possession of his tools and have refused to return them, despite Plaintiff's repeated formal and informal demands.

41. These tools are Plaintiff's personal and irreplaceable property, acquired at significant cost, and are essential for the performance of his skilled labor. At no time did Plaintiff relinquish ownership of these items to Defendants.

42. Defendants deliberate and ongoing refusal to return Plaintiff's tools constitutes conversion under Louisiana Civil Code Article 2315, as well as intentional interference with Plaintiff's economic opportunities and ability to earn a living.

43. Following Plaintiff's discriminatory and retaliatory termination, Defendants failed to provide the statutorily required **COBRA notice** advising Plaintiff of his right to continue group health insurance benefits.

44. As a result of this failure, Plaintiff was deprived of the opportunity to maintain critical health insurance coverage during a time of medical, financial, and emotional vulnerability. Plaintiff was forced to forgo or delay medical treatment, exacerbating his suffering.

45. Plaintiff was never issued a COBRA continuation notice, nor did Defendants advise him of the applicable deadlines, premiums, or procedures, despite knowing or having reason to know of Plaintiff's eligibility.

46. In addition, as a direct consequence of the Defendants' discriminatory, harassing, and malicious actions, Plaintiff's intimate family relationships—particularly with his spouse/partner and children—were severely affected. The emotional, psychological, and financial harm sustained by Plaintiff deeply disrupted his household.

47. Plaintiff's spouse and children suffered loss of companionship, emotional support, intimacy, and the daily benefits of marital unity due to the trauma and instability created by Defendants' unlawful conduct.

## IV. CAUSES OF ACTION

**Causes of Action enumerated under items A-H are as follows:**

   **A. COUNT ONE - VIOLATION OF 42 U.S.C. § 1981**
   **B. COUNT TWO - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (Race and Sex Discrimination / Hostile Work Environment / Retaliation) 42 U.S.C. § 2000e, et seq**

   **C. COUNT       THREE –         VIOLATION OF          THE AMERICANS      WITH DISABILITIES ACT (ADA) (Perceived Disability / Regarded as Disabled Discrimination 42 U.S.C. § 12101, et seq.**

   **D. COUNT FOUR – VIOLATION OF TITLE VII AND § 1981 (Race-Based Discrimination / Pretextual Termination)**

   **E. COUNT FIVE – CONVERSION AND UNLAWFUL RETENTION OF**

PERSONAL PROPERTY (Retaliation, Intentional Interference with Livelihood, and Conversion under Louisiana Law) La. C.C. art. 2315.

F.  COUNT NINE – VIOLATION OF LOUISIANA EMPLOYMENT DISCRIMINATION LAW (LEDL) (La. R.S. 23:301 et seq.)

G.  COUNT TEN – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS  (Under Louisiana State Law)

H.  COUNT ELEVEN – SEXUAL BATTERY (Under Louisiana State Law, La. R.S. 14:43.1), alternatively BATTERY Louisiana also recognizes MISDEMEANOR SEXUAL BATTERY under §14:43.1.1.

I.  COUNT TWELVE – VIOLATION OF COBRA (Failure to Provide Health Insurance Continuation Rights) 29 U.S.C. § 1161 et seq.

J.  COUNT ELEVEN – LOSS OF CONSORTIUM (Under Louisiana State Law – Derivative Claim by Spouse and Children)

---

## A.  COUNT ONE – VIOLATION OF 42 U.S.C. § 1981 (Race-Based Discrimination and Harassment)

48. Plaintiff realleges and incorporates by reference all preceding paragraphs

as if fully set forth herein.

49. 42 U.S.C. § 1981 provides that all persons within the jurisdiction of the

United States shall have the same right to make and enforce contracts, and

to the full and equal benefit of all laws, as is enjoyed by white citizens.

50. Plaintiff, as a Black male employee, was subjected to racially discriminatory treatment when a white coworker assaulted him and used racial slurs, actions which were intended to humiliate Plaintiff and reinforce subjugation on the basis of race.

51. Defendant's failure to prevent, investigate, or remedy the conduct of its employee constitutes discriminatory denial of the full and equal benefit of contractual employment rights in violation of § 1981.

52. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, and other damages compensable under § 1981.

---

## B.  COUNT TWO – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (Race and Sex Discrimination / Hostile Work Environment / Retaliation) 42 U.S.C. § 2000e, et seq.

53. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Defendant, as Plaintiff's employer, is subject to the provisions of Title VII of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race and sex in the terms and conditions of employment.

55. Plaintiff was subjected to unwelcome, offensive, and humiliating conduct in the form of intentional, non-consensual touching of his private area by a white male colleague, committed in front of other white staff members.

56. This conduct was compounded by racially derogatory statements made by the same employee during or immediately after the assault.

57. The conduct was severe, pervasive, and created a hostile and abusive working environment, interfering with Plaintiff's ability to perform his job and affecting the terms and conditions of his employment.

58. Defendant failed to take prompt or effective remedial action following Plaintiff's internal complaints, and thereby ratified the unlawful conduct.

59. Defendant's conduct constitutes unlawful discrimination, harassment, and retaliation in violation of Title VII, entitling Plaintiff to all remedies available under the law, including compensatory damages, punitive damages, attorney's fees, and costs.

### C. COUNT THREE – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA) (Perceived Disability / Regarded as Disabled Discrimination 42 U.S.C. § 12101, et seq.

60. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

61. The Americans with Disabilities Act prohibits discrimination against a qualified individual with a disability, including an individual who is "regarded as" having a physical or mental impairment, even if such impairment does not exist.

62. Defendants, through their agents and employees, regarded Plaintiff as having a mental disability by falsely claiming that Plaintiff was mentally ill, mumbling to himself, or acting erratically, and then requiring him to leave work and not return unless "cleared" by a mental health professional.

63. Plaintiff was otherwise fully capable of performing the essential functions of his job and had no history of mental illness. The requirement of psychological clearance and the labeling of Plaintiff as unstable constituted unlawful discrimination under the ADA.

64. As a direct result of being regarded as disabled and being excluded from the
workplace, Plaintiff suffered economic harm, damage to reputation, emotional
distress, and loss of career advancement.

---

## D.  COUNT FOUR – VIOLATION OF TITLE VII AND § 1981 (Race-Based Discrimination / Pretextual Termination)

65.  Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth
herein.

66. Defendants' false characterization of Plaintiff as mentally ill was not only
baseless but was rooted in racial stereotyping and discriminatory animus.

67. The labeling of Plaintiff as "unstable" or "threatening" was used as a pretext to
justify his termination and deprive him of employment rights due to his race.

68. The fabrication of such narratives disproportionately affects Black employees
and reinforces dangerous racial tropes surrounding aggression and mental
instability.

69. As a result, Defendants violated Title VII and 42 U.S.C. § 1981, and Plaintiff is entitled to compensatory and punitive damages, attorney's fees, and all other relief available by law.

---

### E.  COUNT FIVE – CONVERSION AND UNLAWFUL RETENTION OF PERSONAL PROPERTY (Retaliation, Intentional Interference with Livelihood, and Conversion under Louisiana Law)

70. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

71. Pursuant to La. C.C. art 2315, Conversion is a tort claim which provides for liability for damages caused by fault.

72. Conversion occurs when *"[a] person wrongfully exercises or assumes authority over another's personal property; In a manner inconsistent with the owner's rights.  It does not require intent to deprive permanently, but does require unauthorized possession or control that is inconsistent with the true owner's rights."*

73. In the instant matter, the Defendants unlawfully, and without consent or justification, retained Plaintiff's personal property consisting of professional

tools of his trade, which are necessary for Plaintiff's livelihood and continued ability to work in his chosen profession.

74. The wrongful retention of Plaintiff's property was not incidental, but rather part of a broader pattern of hostility and retaliation arising from the racially toxic workplace and fabricated claims of disability used as pretext to terminate Plaintiff.

75. This conduct amounts to a recalcitrant act of economic sabotage, further compounding the emotional and financial injuries Plaintiff has already suffered as a result of Defendants' discriminatory and retaliatory acts.

76. As a result, Plaintiff has suffered irreparable harm, including loss of income, loss of property, professional disruption, and emotional distress, for which Defendants are liable under Louisiana law.

77. Plaintiff seeks damages for the full replacement value of the property, loss of income associated with the inability to use the tools, emotional harm, and all general and punitive damages as permitted by law.

### F.  COUNT NINE – VIOLATION OF LOUISIANA EMPLOYMENT DISCRIMINATION LAW (LEDL) (La. R.S. 23:301 et seq.)

78. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

79. Under the Louisiana Employment Discrimination Law, it is unlawful to discriminate in employment on the basis of race or disability, including a perceived disability.

80. Defendants treated Plaintiff less favorably than similarly situated employees because of his race and because they falsely regarded him as mentally impaired.

81. Defendants' actions constitute unlawful discrimination and wrongful termination under state law, entitling Plaintiff to all damages permitted under Louisiana law, including back pay, reinstatement (or front pay), compensatory damages, and attorney's fees.

### G.  COUNT TEN – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS  (Under Louisiana State Law La. C.C. 2315; 2320)

82. Plaintiff realleges and incorporates by reference all preceding paragraphs
as if fully set forth herein.

83. Under Louisiana law, a defendant is liable for intentional infliction of
emotional distress when (1) the conduct is extreme and outrageous; (2) the
emotional distress suffered by the plaintiff is severe; and (3) the defendant
intended to cause severe emotional distress or knew that such distress would
likely result.

84. The Defendant's employee engaged in extreme and outrageous
conduct by sexually assaulting Plaintiff and making racial slurs in front
of other staff members, with the intent to humiliate and degrade
Plaintiff.

85. This conduct caused Plaintiff severe emotional distress, anxiety,
embarrassment, and humiliation, all of which were foreseeable
consequences of the assault and discriminatory language.

86. Defendant is vicariously liable under Louisiana Civil Code Article 2320 for the
intentional torts committed against the Plaintiff by Defendant's staff and
employees.

<u>H.</u>  **COUNT ELEVEN – SEXUAL BATTERY (Under Louisiana State Law, La. R.S. 14:43.1), alternatively SEXUAL BATTERY (misdemeanor) under §14:43.1.1.**

87. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

88. Under Louisiana law, a Sexual battery (La. R.S. 14:43.1) is the intentional touching of the anus  or genitals of the victim by the offender, or of the offender by the victim, using any instrumentality or body part, without the consent of the victim.

89. Louisiana also recognizes **Misdemeanor Sexual Battery under La. R.S. 14:43.1.1.,** that involves the intentional touching of the breasts or buttocks of the victim by the offender (or vice versa), either directly or through clothing, without the victim's consent.    Penalties include a fine of up to $1,000, imprisonment for up to six months, or both.

90. Defendant's employee intentionally and without Plaintiff's consent when he came up from behind and grabbed the Plaintiff's chest.   This touching constituting harmful and offensive contact.

91. The act of any co-worker **intentionally grabbing another's person** even through the victim's clothing and without consent, **is sexual battery—** especially if done as a power move, prank, or harassment tactic.

92. This unlawful physical contact meets the legal elements of sexual battery under Louisiana law.

93. The sexual battery occurred at the place of Employment, and in a hostile work environment that was pervasive. Hence, the Defendant is liable for the sexual battery both directly and vicariously under La. Civ. Code art. 2320.

---

**I.  COUNT TWELVE – VIOLATION OF COBRA (Failure to Provide Health Insurance Continuation Rights) 29 U.S.C. § 1161 et seq., penalties**

94. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

95. Under the Consolidated Omnibus Budget Reconciliation Act (C.O.B.R.A.), employers who offer group health insurance plans are required to provide terminated employees with timely written notice of their right to continue health coverage at group rates.

96. Under **ERISA § 502(c)(1)** (29 U.S.C. § 1132(c)(1): "[i]f an employer fails to provide required COBRA notices, the court may impose a **civil penalty of up to $110 per day per beneficiary** for each day the notice is late or not provided."

97. Courts may award the full statutory maximum of any such violation if the conduct was willful or in bad faith.

98. The penalty accrues daily, starting thirty (30) days after the employee requests information or when the notice should have been sent.

99. Plaintiff was covered by Defendants' group health insurance plan at the time of his termination and was therefore eligible to receive COBRA continuation rights.

100. Defendants willfully failed to provide Plaintiff with the required COBRA notice, depriving him of the opportunity to elect continued health coverage and placing both himself and family at serious medical and financial risk.

101. As a result, Plaintiff suffered economic damages, including out-of-pocket medical expenses, loss of insurance coverage, emotional distress, and other harm recoverable under 29 U.S.C. § 1132.

### J. COUNT ELEVEN – LOSS OF CONSORTIUM (Under Louisiana State Law – Derivative Claim by Spouse and Children)

102.   Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

103.   Under **Louisiana Civil Code Article 2315(B)**, damages for loss of consortium, service, and society are recoverable by the same categories of persons who would have a cause of action for wrongful death of the injured person.

104.   As a result of the discriminatory, retaliatory, and malicious conduct by Defendants toward Plaintiff, Plaintiff's spouse Delisea Beverly and their minor children have suffered a loss of consortium.

105.   The harm includes, but is not limited to, loss of society, companionship, affection, emotional support, sexual relations, comfort, and aid that would ordinarily flow from the marital relationship and parental relationship.

106.   Plaintiff's spouse has endured emotional anguish and strain on the marriage resulting directly from the workplace abuse and retaliatory actions taken by Defendants.

107.   Under Louisiana law, a claim for **loss of consortium** is permitted where the Defendant's wrongful acts cause injury to a spouse that diminishes the quality of the marital relationship and the family relationship.

108.   Plaintiff's spouse and children are entitled to compensatory damages under Louisiana tort law for loss of consortium.

## IV.  DAMAGES

100. As a direct result of Defendant's unlawful conduct by its agents, employees, and (contracting) statutory employees that relentlessly targeted Mr. Fernandez, and a

recalcitrant denial of all of the enumerated conduct and the deliberate deprivations of rights and property and dignity by the Defendants, the Plaintiff seeks the following:

     i.    General Damages for each of the Counts Enumerated Above;

     ii.    Back pay and front pay;

     iii.    Daily penalties, interest, and attorney fees for failure to comply with C.O.B.R.A. requirements.

     iv.    Compensatory damages for the intentional infliction of emotional distress

     v.    Punitive damages (where allowed)

vi.     Medical and mental health expenses

vii.    Loss of enjoyment of life

viii.   Damages for loss of consortium (on behalf of Plaintiff's spouse

        and children)

ix.     Attorneys' fees and costs under 42 U.S.C. §2000e-5(k) and §12205, and all
        other discriminatory conduct

x.      Court costs, legal fees, and expenses, and

xi.     All other legal and equitable relief deemed appropriate by the Court

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by a jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, John Fernandez, et al., respectfully prays that Defendant, American Sugar Refinery, LLC, be duly cited and served, and after due proceedings, judgment be rendered in his favor, awarding him all damages, legal fees, and equitable relief deemed just by the Court, along with interest from the date of judicial demand.

Respectfully Submitted,

*/s/ Veleka Eskinde*

**VELEKA ESKINDE, ESQ. LSBN 28305**
LAW OFFICE OF VELEKA ESKINDE, LLC
3205 Orleans Ave
New Orleans, LA 70119
Office: (504) 565-1022
Phone: (504) 565-1021
Cell: (504) 577-0938
Email:velekaeskindelaw@gmail.com
Web: www.velekaeskindelaw.com
*Counsel for John Fernandez and*
*Delisea Beverly, et al.*

*PLEASE SERVE:*

**American Sugar Refining, Inc.**